[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On September 7, 2001, at about 10:23 p.m., members of the Connecticut State Police, Troop K, were conducting a patrol check of the sports fields of Plains Road in Windham, Connecticut. According to the testimony, local officials have repeatedly requested patrols there. These checks were ordered during roll call each evening prior to the start of the shift at the State Police Barracks. The area consists of a soccer field, softball field, tennis courts, and basketball courts together with a parking lot which services these fields. Although the area is not closed at sunset, the area is not lit, and the sports fields are not usable at night. Further, the area is noted for the high instance of criminal activity and there have been numerous instances of used hypodermic needles, used condoms, and empty narcotics baggies being found in the area.
On this specific evening, prior to the detention of this defendant, the troopers noted one other car in the area. They approached the vehicle and, upon ascertaining the identity of the occupants, allowed them to leave the area. The troopers then proceeded to approach the group of people accompanying the defendant. When the officer approached the three individuals, they appeared nervous, were sweating, and were pacing back and forth. The officer also noted an odor of alcohol emanating from the CT Page 835 individual's breath. When one of the individuals attempted to retrieve his identification from the car, the officer decided to pat the individuals down for his own safety. When the defendant put his hands behind his back, the officer noticed a clear baggie containing a white powdery substance which was later determined to be cocaine.
The defendant relies on State v. Donahue, 251 Conn. 636 (1999). UnlikeDonahue, when the officer approached these individuals, he did not do so by turning on his overhead lights. Nor did he block the vehicle from further movement. Cf. State v. Marinoccio, CR 1111669S. In the present case, the police officer merely shined his spot light on the three individuals in a dark parking lot. As soon as he did so, he noticed furtive movement on the part of the three individuals. See, State v.Watson, 165 Conn. 577, 585-86, cert. denied, 416 U.S. 960 (1974). See also, United States v. Dawdy, 46 F3.d 1427 (8th Cir. 1995) (reasonable suspicion where car parked in commercial lot at 10 p.m. on a Sunday night and driver began to leave when police entered the lot.) "Police officers do not violate an individual's constitutional rights by approaching him, by asking him if he is willing to answer some questions, by puffing questions to him if he is willing to listen . . ." State v. Damon,214 Conn. 146, 153-54 (1990) quoting Florida v. Royer, 460 U.S. 491, 497
(1983). To hold that shining a spotlight on an individual in a dark area would violate search and seizure law would extend current decisions and moreover it may needlessly risk the safety of police officers.
Notwithstanding the defendant's argument to the contrary, the court finds that the detention and subsequent seizure of the narcotics from the defendant was lawful. The applicable law is not disputed. "A police officer may briefly detain an individual for investigative purposes if the officer has reasonable and articuable suspicion that the individual has committed or is about to commit a crime. If during the course of a lawful investigatory detention, the officer reasonably believes that the detained individual might be armed and dangerous, the officer may undertake a patdown search to discover weapons. State v. Clark,255 Conn. 268, (2001). The defendant was one of a group of individuals found in a high crime area late at night with no explanation as to why he was there. In point of fact, the defendant was committing a felony, and one of his companions was a wanted man. The police acted appropriately in approaching and questioning these individuals, and in illuminating the scene, and checking the defendant for weapons to insure the officer's safety.
Accordingly, the motion to suppress is denied.
 ___________________ J. Kocay, J.
CT Page 836